**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Kevin Chan, Esq. (KC 0228)
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: kchan@rosenlegal.com

Counsel for Plaintiff Li

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
WEIYONG LI, Individually and on Behalf of
All Others Similarly Situated,                              CASE No.:

        Plaintiff,                                    <u>CLASS ACTION</u>

      vs.                                             <u>**JURY TRIAL DEMANDED**</u>

JOHN P. MESSINA, SR., MICHAEL J.
GOLDE, JOSEPH CASSERA, ROBERT
CASSERA, JAMES ALTUCHER, JAMES
FOLEY, KAREN AMATO, THOMAS J.
CLARKE, JR., LARRY MELBY, SYLVAN
HOLZER, and CORPORATE RESOURCE
SERVICES, INC.,

        Defendants.
---------------------------------------------------------X

<u>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**</u>

    Plaintiff Weiyong Li ("Plaintiff"), individually and on behalf of all other persons

similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against

Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's

own acts, and upon information and belief as to all other matters based on the investigation

conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Corporate Resource Services, Inc. ("Corporate Resource Services" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of Corporate Resource Services between July 1, 2014 and February 6, 2015 (the "Class Period"), inclusive, seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as Defendant Corporate Resource Services maintains an office and conducts business in this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Corporate Resource Services common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Corporate Resource Services is a Delaware Corporation headquartered in New York, New York, which provides diversified technology, staffing, recruiting, and consulting services in the United States. During the Class Period, the Company's stock was traded on the NASDAQ Stock Exchange ("NASDAQ") under the symbol "CRRS."

8.      Defendant John P. Messina ("Messina") has been the Company's Chairman and Chief Executive Officer at all relevant times. Messina has been employed by Tri-State Employment Services, Inc. ("TSE") since 1997 and has served as Executive Vice President of TSE since January 1998.

9.      Defendant Michael J. Golde ("Golde") has been the Company's Chief Financial Officer at all relevant times until his resignation on January 12, 2015. He was replaced by Joseph P. Ciavarella, who resigned on February 20, 2015.

10.     Defendant Joseph Cassera ("J. Cassera") has been a Director of the Company at all relevant times. J. Cassera has served as Vice President of Operations of TSE since January 2001 and is the brother is Robert Cassera.

11.     Defendant Robert Cassera ("R. Cassera") has been a Director of the Company at all relevant times until his resignation on February 4, 2015. As of November 21, 2014, R. Cassera beneficially owned approximately 79.4% of the outstanding common stock of Corporate

Resource Services. R. Cassera is the founder, sole owner, and has been the president and director of TSE since 1993 and is the brother of J. Cassera.

12.     Defendant James Altucher ("Altucher") has been a Director of the Company at all relevant times until his resignation on February 10, 2015.

13.     Defendant James Foley ("Foley") has been a Director of the Company at all relevant times. Foley has been Chief Operating Officer of TSE since 1997.

14.     Defendant Karen Amato ("Amato") has been a Director of the Company and the Chairman of the Company's Audit Committee at all relevant times until her resignation on September 28, 2014.

15.     Defendant Thomas J. Clarke, Jr. ("Clarke") has been a Director of the Company and a member of the Audit Committee at all relevant times until his resignation on February 5, 2015.

16.     Defendant Larry Melby ("Melby") has been a Director of the Company and a member of the Audit Committee at all relevant times until his resignation on February 5, 2015.

17.     Defendant Sylvan Holzer ("Holzer") was a Director of the Company and the Chairman of the Company's Audit Committee from September 29, 2014 until his resignation on February 5, 2015.

18.     Defendant Messina, Golde, J. Casseram, R. Cassera, Altucher, Foley, Amato, Clarke, Melby, and Holzer are collectively referred to hereinafter as the "Individual Defendants."

19.     Each of the Individual Defendants:

        (a)     directly participated in the management of the Company;

        (b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

20.     Corporate Resource Services is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

21.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Corporate Resource Services under *respondeat superior* and agency principles.

22.     Defendant Corporate Resource Services and the Individual Defendants are collectively referred to hereinafter as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Corporate Resource Services is a national provider of diversified staffing, recruiting and consulting services, including temporary staffing services, with a focus on light industrial services, the insurance industry and clerical and administrative support.

24.     R. Cassera effectively controls Corporate Resource Services and its Board of Directors as his majority ownership of the Company gives him the ability to cause the election of all of the members of the Board, appoint new management, and approve actions requiring the approval of our shareholders.

25.     R. Cassera has interest in and controls a group of affiliated entities, including Tri-State Employment Services, Inc. ("TSE") and its wholly owned subsidiaries TS Employment, Inc. ("TS Employment") and TSE-PEO, Inc. ("TSE-PEO") (collectively, "Tri-State").

26.     On August 27, 2010, Corporate Resource Services entered into a Master Service Agreement with Tri-State's affiliates TS Employment and TSE-PEO. These agreements provide for the provision of professional employer services for the Company and its subsidiaries.

27.     Tri-State provides professional employer services to the Company as part of a co-employment arrangement where Tri-State is the employer of record and the Company is the worksite employer. Professional employer services provided by Tri-State include payroll services, administration of employee benefits, workers' compensation insurance coverage, customer invoicing and accounts receivable collection services.

28.     Tri-State charges the Company an amount equal to the actual wages and associated payroll taxes for the employee plus an agreed upon rate for workers' compensation and health insurance as well as an administrative fee.

29.     Corporate Resource Services' subsidiaries: Accountabilities, CRD, Diamond Staffing, ICG, Insurance Overload, and TS Staffing are parties to account purchase agreements

with Wells Fargo Capital Finance (the "Account Purchase Agreements"), an operating division of Wells Fargo Bank, N.A. ("Wells Fargo"). Pursuant to the Account Purchase Agreements, a maximum amount of $80.0 million of accounts receivable can be financed through Wells Fargo (the "Facility"). The Facility is personally guaranteed by the Company's majority shareholder. The Facility allows for 90% of qualifying receivables to be funded. The Facility calls for twice weekly net settlement of the additions, required repurchases and customer repayments.

### Defendant's False and Misleading Statements

30.     The Class Period begins on July 1, 2014, when the Company filed a Form 10-K for the fiscal year ended January 3, 2014 (the "2013 10-K") with the SEC, which provided the Company's year end financial results and position. The 2013 10-K stated that the total amount charged by Tri-State for the Fiscal Years 2013 and 2012 was $717.2 million and $596.2 million, respectively. The 2013 10-K was signed by Defendants Messina, Golde, J. Cassera, R. Cassera, Altucher, Foley, Amato, Clarke, and Melby. The 2013 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Messina and Golde attesting to the accuracy of the financial condition and results of operations of the Company.

31.     On August 20, 2014, the Company filed a Form 10-Q for the quarterly period ended April 4, 2014 (the "1Q2014 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 1Q2014 10-Q was signed by Defendants Messina and Golde. The 1Q2014 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Messina and Golde attesting to the accuracy of the financial condition and results of operations of the Company.

32.     On September 25, 2014, the Company filed a Form 10-Q for the quarterly period ended July 4, 2014 (the "2Q2014 10-Q") with the SEC, which provided the Company's quarterly

financial results and position. The 2Q2014 10-Q was signed by Defendants Messina and Golde. The 2Q2014 10-Q contained signed SOX certifications by Defendants Messina and Golde attesting to the accuracy of the financial condition and results of operations of the Company.

33.     On November 14, 2014, the Company filed a Form 10-Q for the quarterly period ended October 3, 2014 (the "3Q2014 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 3Q2014 10-Q was signed by Defendants Messina and Golde. The 2Q2014 10-Q contained signed SOX certifications by Defendants Messina and Golde attesting to the accuracy of the financial condition and results of operations of the Company.

34.     The statements referenced in ¶¶ 30 – 33 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) TSE has a material unpaid federal payroll tax liability; (2) TSE's material unpaid federal payroll tax liability has a potential adverse impact on TSE and the Company; and (3) as a result of the foregoing, Corporate Resource Services' SEC filings were materially false and misleading at all relevant times.

35.     On December 9, 2014, the Company filed a Form 8-K with the SEC announcing an amendment to the Account Purchase Agreements (the "Amendment") with Wells Fargo. Pursuant to the Amendment, the Company and each of its subsidiaries agreed to: (i) deliver to Wells Fargo, on or before December 19, 2014, a proposal letter to provide debt or equity financing to the Company in an amount no less than, and the proceeds of which to be used to repay in cash in full, all indebtedness, liabilities and obligations of the Company and its affiliates

to Wells Fargo under the Account Purchase Agreements and related documents; (ii) deliver to Wells Fargo, on or before January 15, 2015, a commitment letter with respect to such financing proposal, and (iii) repay all amounts owing to Wells Fargo under the Account Purchase Agreements on or before January 31, 2015.

36.     On December 22, 2014, the Company issued a press release entitled "Corporate Resource Services Confirms Compliance with Wells Fargo Account Purchase Agreements," which stated in relevant parts:

> Corporate Resource Services, Inc. (CRRS), (the "Company" or, "CRS"), a diversified technology, staffing, recruiting, and consulting services firm, continues to make progress in its refinancing process with investment bank, Carl Marks Advisors. The Company and Carl Marks are currently in discussions with potential new lenders and have received letters which achieved the December 19th, 2014 milestone in its amendment with Wells Fargo Bank, National Association.
>
> "We are pleased to be moving forward in our financing process and are working closely with our current and prospective lenders," said John P. Messina, Chief Executive Officer of Corporate Resource Services.

37.     The statements referenced in ¶ 36 above were materially false and/or misleading because the Company was in fact not in compliance with the Tangible Net Worth covenant under the Account Purchase Agreements as of November 30, 2014.

## **The Truth Emerges**

38.     On September 29, 2014, the Company announced the abrupt resignation of Defendant Amato on September 28, 2014, who would be replaced by Defendant Holzer.

39.     On January 12, 2015, the Company announced that abrupt resignation of Defendant Golde effective January 12, 2015 for "personal reasons," who would be replaced by Joseph P. Ciavarella.

40.     On this news, shares of the Company fell $0.05 per share or over 4% to close at $1.07 per share, damaging investors.

41.     On February 3, 2015, the Company filed a Form 8-K with the SEC, which revealed that: (i) as of November 30, 2014, the Company was not in compliance with the Net Worth covenant under the Account Purchase Agreements; (ii) on January 27, 2015, the Company learned that TSE has a material unpaid federal payroll tax liability, which the Company's Audit Committee is investigating; (iii) on January 28, 2015, Wells Fargo indicated to the Company that it would need to reconsider funding the Company's operations through the Account Purchase Agreement; (iv) on February 2, 2015, TSE filed for bankruptcy. The February 3[th] Form 8-K states in relevant parts:

> Item 2.04 Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation Under an Off-Balance Sheet Arrangement
>
> As previously reported, in an amendment dated as of December 3, 2014 ( the "Amendment") to the account purchase agreements (each an "Account Purchase Agreement") between Wells Fargo Bank, National Association ("Wells Fargo") and Corporate Resource Services, Inc. ("CRS") and each of its subsidiaries, Corporate Resource Development Inc., Diamond Staffing Services, Inc., Insurance Overload Services, Inc., TS Staffing Services, Inc., Accountabilities, Inc. and Integrated Consulting Group, Inc. (together the "Company"), the Company agreed to (a) deliver to Wells Fargo, on or before December 19, 2014, a proposal letter (the "Proposal Letter") to provide debt or equity financing to the Company in an amount no less than, and the proceeds of which to be used to repay in cash in full, all indebtedness, liabilities and obligations of the Company and its affiliates to Wells Fargo under the Account Purchase Agreements and related documents, (b) deliver to Wells Fargo, on or before January 15, 2015, a commitment letter (the "Commitment Letter") with respect to such financing proposal, and (c) repay all amounts owing to Wells Fargo under the Account Purchase Agreements on or before January 31, 2015.
>
> On January 15, 2015, the Company reported to Wells Fargo, through submission of a report first due on December 15, 2014, that it was not in compliance with the Tangible Net Worth covenant under the Account Purchase Agreements as of November 30, 2014, and the Company had not yet delivered to Wells Fargo its December 2014 monthly report, due by January 15, 2015. These failures and noncompliances constitute and resulted in defaults under the Account Purchase

Agreements. Following the report to Wells Fargo, Wells Fargo proposed that it would provide a waiver of the default to February 15, 2015 in return for an increase in monitoring fees, and an increase of the subordination of amounts due Mr. Robert Cassera, the owner of over 80% of our common stock, from $32 million to $40 million. The Company continued its efforts to obtain substitute financing.

On January 27, 2015, the Company learned that TS Employment, Inc. ("TSE"), a company owned by Mr. Cassera that provides PEO services to the Company, and in that role, processes all payroll and revenue billing for the Company, has a material unpaid federal payroll tax liability. On January 28, 2015, Wells Fargo informed the Company that, based on concerns regarding this material payroll tax liability and its potential adverse effects on TSE and the Company as well as the Company's previously reported failures to comply with the Amendment, Wells would need to reconsider funding the Company's operations through the Account Purchase Agreement. The Audit Committee of the Board of Directors ("Audit Committee") has commenced an independent investigation of certain of the matters described above. The Audit Committee has retained independent counsel in connection with such independent investigation.

On January 30, 2015, Wells Fargo met with the Company to develop a plan under which Wells could finance the Company on a short-term basis while the situation with TSE was stabilized and while the Company was developing a longer term strategy. Those discussions are ongoing. Part of any strategy may include a sale of some or all of the assets of the Company or other disposition of the Company's business. No assurance can be given that a funding plan can be reached with Wells Fargo or that the sale of some or all of the assets of the Company can be completed in a timely manner.

On February 2, 2015, TSE filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York and a bankruptcy trustee was appointed for TSE. The Company continues to work with TSE, and TSE is expected to continue to perform services for the Company in the ordinary course of business during its bankruptcy proceeding.

42.     On this news, shares of the Company fell $0.39 per share over the next two days or 59% from its previous closing price on February 2, 2015 to close at $0.27 per share on February 4, 2015.

43.     On February 6, 2015, the Company filed a Form 8-K with the SEC during after market hours revealing that the financial statements for the year ended January 3, 2014 and the

quarters ended April 4, 2014, July 4, 2014 and October 3, 2014 can no longer be relied on due to

TSE's material unpaid federal payroll tax liability. The February 6th Form 8-K states in relevant

part:

> **ITEM 4.02 Non-Reliance On Previously Issued Financial Statements Or A Related Audit Report Or Completed Interim Review.**
>
> On January 27, 2015, Corporate Resource Services, Inc. (the "Company") learned that TS Employment, Inc. ("TSE"), a company that provides PEO services to the Company, and in that role processes all payroll and revenue billing for the Company, has a material unpaid federal payroll tax liability. TSE is owned by Mr. Robert Cassera, the principal shareholder of the Company, On January 28, 2015, Wells Fargo informed the Company that, based on concerns regarding this material payroll tax liability and its potential adverse effects on TSE and the Company as well as the Company's previously reported failures to comply with the Amendment, Wells would need to reconsider funding the Company's operations
>
> On February 2, 2015, TSE filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York and an independent reorganization officer was appointed for TSE. The Company continues to work with TSE, and TSE is expected to continue to perform services for the Company in the ordinary course of business during its bankruptcy proceeding.
>
> Management of the Company alerted Crowe Horwath LLP ("Crowe Horwath"), the independent auditor of the Company, of the aforementioned events. Management believes that the financial statements for the year ended January 3, 2014 and the quarters ended April 4, 2014, July 4, 2014 and October 3, 2014 can no longer be relied on. On February 3, 2015, after discussions with management and members of the Audit Committee of the Company, Crowe Horwath delivered a letter stating that disclosure should be made or action taken to prevent future reliance on their audit report dated June 30, 2014 related to the Company's January 3, 2014 financial statements filed on Form 10-K, and their completed interim reviews on the April 4, 2014, July 4, 2014, and October 3, 2014 financial statements filed in their respective Form 10-Qs, due to the impact of material uncertainties related to payroll tax matters on those previously issued financial statements.
>
> The Company provided Crowe Horwath with a copy of the disclosure set forth in this Item 4.02 and has requested that Crowe Horwath furnish the Company with a letter addressed to the SEC stating whether or not it agrees with the statements made herein, each as required by applicable SEC rules.

Crowe Horwath's letter has not been received to date and will be filed in an amendment to this Current Report.

44.     On that same day, the Company announced the resignation of Defendant R. Cassera effective February 4, 2015.

45.     On this news, shares of the Company fell $0.06 per share or over 18% from its previous closing price to close at $0.27 per share on February 9, 2015.

46.     On February 10, 2015, the Company announced the abrupt resignation of Defendants Clarke, Holzer, and Melby – the members of the Audit Committee – effective February 5, 2015. In each of their resignation letters, Defendants Clarke, Holzer, and Melby indicated that they learned of TSE's unpaid federal payroll tax liability on January 29, 2015 and the Audit Committee sought to commence an investigation on the matter, but was denied funding by Wells Fargo, which has sole control of the Company's financing. They also stated that their resignation stemmed from their inability to obtain funding to conduct the necessary investigation and other concerns about the situation, including the related party relationships between the Company and TSE.

47.     On this news, shares of the Company fell $0.04 per share or over 14% from its previous closing price to close at $$0.23 per share on February 10, 2015.

48.     On that same day, the Company announced during after market hours the abrupt resignation of Joseph P. Ciavarella as Chief Financial Officer of the Company effective February 20, 2015.

49.     On that same day, the Company announced during after market hours the abrupt resignation of Defendant Altucher effective immediately.

50.     As a result of Defendants' false and/or misleading statements, shares of Corporate Resource Services traded at inflated prices during the Class Period. However, after disclosure of

Defendants' false and/or misleading statements, shares of Corporate Resource Services suffered a precipitous decline in the market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Corporate Resource Services common stock during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Corporate Resource Services, members of the Individual Defendants' and Director Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

52.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Corporate Resource Services common stock was actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

53.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

54.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, and prospects of Corporate Resource Services;

- whether defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the defendants caused Corporate Resource Services to issue false and misleading SEC filings during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of Corporate Resource Services' common stock during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

56.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

57.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Corporate Resource Services shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

- As a public issuer, Corporate Resource Services filed periodic public reports with the SEC and the NASDAQ;

- Corporate Resource Services regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Corporate Resource Services was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

58. Based on the foregoing, the market for Corporate Resource Services common stock promptly digested current information regarding Corporate Resource Services from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

59. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
(Against Corporate Resource Services and the Individual Defendants)**

60. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     This Count is asserted against Corporate Resource Services and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

62.     During the Class Period, Corporate Resource Services and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63.     Corporate Resource Services and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Corporate Resource Services common stock during the Class Period.

64.     Corporate Resource Services and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Corporate Resource Services were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Corporate Resource Services, their control over, and/or receipt and/or modification of Corporate Resource Services' allegedly materially

misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Corporate Resource Services, participated in the fraudulent scheme alleged herein.

65.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Corporate Resource Services personnel to members of the investing public, including Plaintiff and the Class.

66.     As a result of the foregoing, the market price of Corporate Resource Services common stock was artificially inflated during the Class Period. In ignorance of the falsity of Corporate Resource Services' and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Corporate Resource Services securities during the Class Period in purchasing Corporate Resource Services common stock at prices that were artificially inflated as a result of Corporate Resource Services' and the Individual Defendants' false and misleading statements.

67.     Had Plaintiff and the other members of the Class been aware that the market price of Corporate Resource Services common stock had been artificially and falsely inflated by Corporate Resource Services' and the Individual Defendants' misleading statements and by the material adverse information which Corporate Resource Services' and the Individual Defendants did not disclose, they would not have purchased Corporate Resource Services common stock at the artificially inflated prices that they did, or at all.

68.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

69.     By reason of the foregoing, Corporate Resource Services and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Corporate Resource Services common stock during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

70.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     During the Class Period, the Individual Defendants participated in the operation and management of Corporate Resource Services, and conducted and participated, directly and indirectly, in the conduct of Corporate Resource Services' business affairs. Because of their senior positions, they knew the adverse non-public information about Corporate Resource Services' misstatement of revenue and profit and false financial statements.

72.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Corporate Resource Services' financial condition and results of operations, and to correct promptly any public statements issued by Corporate Resource Services which had become materially false or misleading.

73.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Corporate Resource Services disseminated in the marketplace during the Class Period concerning Corporate Resource Services' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Corporate Resource Services to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Corporate Resource Services within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Corporate Resource Services common stock.

74.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Corporate Resource Services.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and postjudgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 2, 2015                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        /s/ Kevin Chan
                                        Laurence M. Rosen, Esq. (LR 5733)
                                        Phillip Kim, Esq. (PK 9384)
                                        Kevin K. Chan, Esq. (KC 0228)
                                        275 Madison Avenue, 34th Floor
                                        New York, NY  10016
                                        Phone: (212) 686-1060
                                        Fax: (212) 202-3827

                                        Counsel for Plaintiff Li

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Corporate Resource Services, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Corporate Resource Services, Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:** weiyong
**Middle initial:**
**Last name:** li
**Address:**
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 1/30/2015 | 1000 | 0.62 |
| Common Stock | 10/28/2014 | 1000 | 1.20 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:          **YES**

**Certification for weiyong li (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 02/26/2015