# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN CALFO and JANEZ DEMSAR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT CASSERA, MICHAEL J. GOLDE, and JOHN P. MESSINA, SR. <br><br> Defendants. | **Case No.: 1:15-CV-04010 (LGS)** |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (together with all Exhibits hereto, the "Stipulation"), dated as of May 31, 2017, is entered into by and among (i) Stephen Calfo and Janez Demsar ("Lead Plaintiffs," as defined herein), on behalf of themselves and the Settlement Class (as defined herein), and (ii) the Defendants Robert Cassera ("Cassera"), Michael J. Golde ("Golde"), and John P. Messina, Sr. ("Messina") (collectively, the "Defendants"), by and through their respective undersigned counsel, and embodies all of the terms and conditions of the settlement of the above-captioned action ("Action"). Subject to the approval of the United States District Court for the Southern District of New York (the "Court") and the terms and conditions expressly provided herein, this Stipulation is intended by the Settling Parties (as defined herein) to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice the Action and the Released Claims (as defined herein) asserted therein against the Released Parties (as defined herein).

Throughout this Stipulation, all terms used with initial capitalization, but not immediately defined, have the meanings ascribed to them in Section 1 below.

**WHEREAS:**

**A.     The Action**

This litigation was commenced in the United State District Court for the Southern District of New York on March 2, 2015, styled as *Weiyong Li* v. *John P. Messina, Sr., et al.,* 1:15-CV-04010, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78j (b) and 78t (a)) and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder ("SEC Rule 10b-5") (17 C.F.R. §240.10b-5).

On May 29, 2015, the Court appointed Stephen Calfo and Janez Demsar as Lead Plaintiffs and appointed Lead Plaintiffs' chosen counsel, Pomerantz LLP, as Lead Counsel, pursuant to the Private Securities Litigation Reform Act, as amended.

On August 14, 2015, Lead Plaintiffs filed the Amended Class Action Complaint ("Amended Complaint") against Defendants.[1] The Amended Complaint asserted claims against Messrs. Cassera, Golde, and Messina under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, alleging that Defendants made materially false and misleading statements and failed to disclose certain material facts about Corporate Resource Services, Inc.'s ("Corporate Resource," "CRS," or the "Company") material payroll-withholding-tax liability ("PWT liability"). The Amended Complaint alleged that these statements and omissions caused the price of CRS stock to be artificially inflated; that the price declined due to eight separate curative

---

[1] The Amended Complaint further named as Defendants Jay H. Schecter, Scott Schecter, Joseph Cassera, James Altucher, James Foley, Karen Amato, Thomas J. Clarke, Jr., Larry Melby, and Sylvan Holzer. All of these original Defendants were dismissed, either voluntarily or by Court order, and none are party to this Stipulation.

disclosures dating from January 12, 2015 through March 20, 2015, inclusive, related to the material PWT liability, and that the price declines reflected a harm to prior purchasers of CRS stock.

On October 30, 2015, Defendants filed their motions to dismiss the Amended Complaint. On July 5, 2016, the Court issued an Opinion and Order denying Defendants' motions to dismiss. On August 30, 2016, following a conference, the Court entered a Civil Case Management Plan and Scheduling Order, setting a fact discovery cut-off of June 30, 2017, with an expert discovery cut-off "to be determined." On November 9, 2016, Lead Plaintiffs moved for class certification. Defendants filed their oppositions on January 16, 2017, and Lead Plaintiffs filed their reply on March 27, 2017.

### B.     The Settlement

On December 16, 2016, Lead Plaintiffs and Defendants ("Parties") attended a mediation with Jed D. Melnick ("Melnick") of JAMS. In advance of that session, Lead Plaintiffs and Defendants exchanged detailed confidential statements and exhibits. These statements and exhibits were also submitted to Mr. Melnick. The parties were not successful in achieving a resolution at the conclusion of mediation. On April 18, 2017, the parties attended a second mediation, again with Mr. Melnick. At the second mediation, Lead Plaintiffs and Defendants agreed to settle all claims for the sum of $1.65 million.

This Stipulation (together with the exhibits hereto) memorializes the agreement between the parties to fully and finally settle the Action and to fully release all Released Claims against the Defendants and the Released Parties with prejudice in return for specified consideration. This Stipulation (together with the exhibits hereto) has been duly executed by the undersigned signatories on behalf of their respective clients and reflects the final and binding agreement between the Parties.

## C.      The Defendants' Denial Of Wrongdoing And Liability

Throughout the course of the Action and in this Stipulation, Defendants have denied and continue to deny all claims and contentions alleged by Lead Plaintiffs in the Action and maintain that they have meritorious defenses.  Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action.  Defendants also have denied and continue to deny, among other things, that the Defendants engaged in any conduct that was subject to or violated the federal securities laws, that Lead Plaintiffs and the Settlement Class ("Class"), consisting of persons and entities who purchased the publically traded securities of Corporate Resource from April 26, 2012 through March 20, 2015, inclusive,[2] have suffered damages, that the price of Corporate Resource securities was artificially inflated by reasons of alleged misrepresentations, non-disclosures, or otherwise, that Lead Plaintiffs and the Class were harmed by the conduct alleged in the Amended Complaint, and the amount of the alleged damages.

Nonetheless, Defendants have concluded that further conduct of the Action would be protracted and expensive and have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Action.  Defendants have therefore determined that it is desirable and beneficial to settle the Action in the manner and upon the terms and conditions set forth in this Stipulation.  As set forth below in ¶ 11 of this Stipulation, neither this Stipulation nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement constitutes an admission or finding of wrongful conduct, acts, or omissions.

---

[2] The definition of the Settlement Class is set forth in ¶ 1.32 of this Stipulation.

### D.      Claims of Lead Plaintiffs And Benefits of Settlement

Lead Plaintiffs believe that the claims asserted in the Action have merit. Lead Plaintiffs, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and appeals.  Lead Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation. In particular, Lead Plaintiffs have considered the inherent problems of proof and possible defenses to the federal securities law violations asserted in the Action, including the defenses that have been or could be asserted by Defendants during the litigation, including the motion for summary judgment, and trial.  Lead Plaintiffs have therefore determined that the Settlement set forth in this Stipulation is fair, adequate, reasonable, and in the best interests of the Settlement Class.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among the Lead Plaintiffs (on behalf of themselves and each of the Settlement Class Members) and Defendants, by and through their respective undersigned counsel, that, subject to the approval of the Court, in consideration of the benefits flowing to the Settling Parties from the Settlement set forth herein, the Action and the Released Claims as against the Released Parties will be finally and fully compromised, settled, and released, the Action will be dismissed with prejudice, and the Released Claims will be finally and fully released as against all parties, upon and subject to the terms and conditions of this Stipulation, as follows:

### 1.      Definitions

In addition to the terms defined above, the following capitalized terms used in this Stipulation will have the meanings specified below:

  1.1.     "Action" means the putative class action captioned *Calfo, et al. v. Messina, Sr., et al.*, 1:15-CV-04010 (LGS) (S.D.N.Y).

1.2.    "Administrative Costs" means all costs and expenses associated with providing notice of the Settlement to the Settlement Class and otherwise administering or carrying out the terms of the Settlement.  Such costs may include, without limitation: escrow agent costs, the costs of publishing the summary notice, the costs of printing and mailing the Notice and Proof of Claim, as directed by the Court, and the costs of allocating and distributing the Net Settlement Fund to the Authorized Claimants.  Such costs do not include legal fees.

1.3.    "Adversary Proceedings" means *Feltman v. Tri-State Employment Services*, No. 17-ap-1013 (Bankr. S.D.N.Y.) and *Feltman v. Tri-State Employment Services*, No. 17-ap-1014 (Bankr. S.D.N.Y.), pending in the Bankruptcy Court.

1.4.    "Authorized Claimant" means any Settlement Class Member who is a Claimant and whose claim for recovery has been allowed pursuant to the terms of this Stipulation, the exhibits hereto, and any order of the Court.

1.5.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, or such other court with jurisdiction over CRS's bankruptcy proceedings and property.

1.6.    "Business Day" means any day except Saturday or Sunday or any other day on which national banks are authorized by law or executive order to close in the State of New York.

1.7.    "Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court prescribes.

1.8.    "Claims" means any and all manner of claims, debts, demands, controversies, obligations, losses, costs, interest, penalties, fees, expenses, rights, duties, judgments, sums of money, suits, contracts, agreements, promises, damages, causes of action,

duties, losses, diminutions in value, judgments, decrees, matters, issues, and liabilities, of every and any kind or nature whatsoever (including, without limitation, any claims for damages, whether compensatory, special, incidental, consequential, punitive, exemplary, or otherwise, injunctive relief, declaratory relief, recession or recessionary damages, interest, attorneys' fees, expert or consulting fees, costs, or expenses), accrued or unaccrued, known or unknown, contingent or absolute, liquidated or not liquidated, suspect or unsuspected, disclosed or undisclosed, apparent or not apparent, foreseen or unforeseen, matured or not matured, which now exist, or heretofore or previously existed, or may hereafter exist, including, without limitation, any claims arising under federal, state, common, administrative, or foreign law, common law, bankruptcy law, agreement, or any other law, rule, or regulation, whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, regulatory, governmental, or of any other type or in any other capacity.

1.9.    "Claims Administrator" means Strategic Claims Services**,** which will administer the Settlement.

1.10.    "Common Stock" means the shares of common stock of Corporate Resource.

1.11.    "Defendants" means Cassera, Golde, and Messina.

1.12.    "Escrow Account" means an interest-bearing escrow account established by the Escrow Agent at Huntington Bank.  The Escrow Account will be managed by the Escrow Agent, subject to the Court's supervisory authority, for the benefit of Lead Plaintiffs and the Settlement Class in accordance with the terms of the Stipulation and any order of the Court.

1.13.    The "Escrow Agent" is Pomerantz LLP.  The Escrow Agent will perform the duties as set forth in this Stipulation and any order of the Court.

**1.14.** "Effective Date" will have the meaning set forth in ¶ 10.3 of this Stipulation.

**1.15.** "Final" means when the last of the following with respect to a judgment or order occurs: (i) if no appeal or request for review is filed, the day after the date of expiration of any time for appeal or review, or (ii) if an appeal or request for review is filed, the day after the date the appeal or request for review is dismissed, or the judgment or appeal is upheld on appeal or review in all material respects, and is not subject to further review on appeal or by certiorari or otherwise; provided, however, that no order of the court or modification or reversal on appeal or any other order relating solely to the amount, payment, or allocation of attorneys' fees and expenses or to the Plan of Allocation will constitute grounds for cancellation or termination of this Settlement or affect its terms, including the release in ¶ 6.1, or will affect or delay the date on which the Final Judgment becomes Final.

**1.16.** "Final Judgment" means the order and judgment to be entered by the Court finally approving the Settlement and dismissing the Action with prejudice, materially in the form attached hereto as Exhibit B.

**1.17.** "Insurer" means the secondary and tertiary insurers under director and officer liability policies issued to Corporate Resource, for the period April 26, 2012 to March 20, 2015, inclusive, specifically: a) Illinois National Insurance Company; and b) Federal Insurance Company, a member of the Chubb Group of Insurance Companies.

**1.18.** "Lead Counsel" means Pomerantz LLP.

**1.19.** "Lead Plaintiffs" means Stephen Calfo and Janez Demsar, as identified in the opening paragraph of the Amended Complaint.

1.20.    "Notice" means the "Notice of Pendency and Proposed Settlement of Class Action," which is to be sent to Settlement Class Members substantially in the form attached hereto as Exhibits A-1-4.

1.21.    "Opt-Out" means any one of, and "Opt-Outs" means all of, any Persons who otherwise would be Settlement Class Members and have timely and validly requested exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice given pursuant thereto.

1.22.    "Person" means an individual, corporation, fund, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.23.    "Plan of Allocation" means a plan or formula for allocating the Settlement Fund to Authorized Claimants after payment of Administrative Costs, Taxes, and Tax Expenses, and such attorneys' fees, costs, and expenses as may be awarded by the Court.  Any Plan of Allocation is not a condition to the effectiveness of this Stipulation, and the Released Parties will have no responsibility or liability with respect thereto.

1.24.    "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Settlement Class substantially in the form attached hereto as Exhibit A.

1.25.    "Proof of Claim" means the Proof of Claim and Release Form to be submitted by Claimants, substantially in the form attached hereto as Exhibit A-2.

**1.26.** "Related Parties" means, with respect to each Released Party, the immediate family members, heirs, executors, administrators, successors, assigns, employees, officers, directors, attorneys, legal representatives, insurers, reinsurers, and agents of each of them, and any person or entity which is or was related to or affiliated with any Released Party or in which any Released Party has a controlling interest, and the present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and the employees, officers, directors, attorneys, assigns, legal representatives, insurers, reinsurers, and agents of each of them.

**1.27.** "Released Claims" means and includes any and all Claims and Unknown Claims (as defined in ¶ 1.388) that have been or could have been asserted in the Action, in any capacity, which arise out of, are based upon, in connection with, or relate in any way to the purchase or acquisition of Corporate Resource securities during the Settlement Class Period (described herein), including, without limitation, any claims alleged in the Action and any claims related to the allegations, transactions, facts, events, matters, occurrences, acts, disclosures, representations, omissions, or any other matter whatsoever involved, set forth, referred to, or otherwise related, directly or indirectly, to the allegations in the Action or the disclosures made in connection therewith (including the adequacy and completeness or such disclosures). Notwithstanding the foregoing, "Released Claims" does not include claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.

**1.28.** "Released Parties" means Cassera, Golde, and Messina, and any of their Related Parties, including all present or former directors, officers, employees, employers, agents, and advisors of CRS.

**1.29.** "Releasing Parties" means Lead Plaintiffs, each and every Settlement Class Member and each of their respective parent entities, associates, affiliates, subsidiaries,

predecessors, successors, assigns, attorneys, immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates.

**1.30.**   "Settlement" means the settlement contemplated by this Stipulation.

**1.31.**   "Settlement Amount" means the sum of $1,650,000.00 (One Million Six Hundred Fifty Thousand U.S. Dollars).  The Settlement Amount includes all Administrative Costs, Lead Counsel's attorneys' fees, and expenses, as allowed by the Court, Settlement Class Member benefits, as well as any other costs, expenses, or fees or any kind whatsoever associated with the Settlement.

**1.32.**   "Settlement Class" means all persons who purchased securities of Corporate Resource during the Settlement Class Period.  Excluded from the Settlement Class are Defendants, Corporate Resource, any Corporate Resource affiliate, any entity in which Defendants have or had a controlling interest, the present and former officers and directors of any of the foregoing, and any of the immediate families, legal representatives, heirs, successors, and assigns of any of the foregoing.  Also excluded from the Settlement Class are those Persons who submit valid and timely requests for exclusion from the Settlement Class in accordance with the requirements set forth in the Notice.

**1.33.**   "Settlement Class Member" means any one of, and "Settlement Class Members" means all of, the members of the Settlement Class.

**1.34.**   "Settlement Class Period" means the period from April 26, 2012 to March 20, 2015, inclusive.

**1.35.**   "Settlement Fund" means the Settlement Amount transferred to the Escrow Account pursuant to this Stipulation and any interest or other income earned thereon.

**1.36.** "Settlement Hearing" means the hearing at or after which the Court will make a final decision pursuant to Federal Rule of Civil Procedure 23 as to whether the Settlement contained in the Stipulation should receive final approval from the Court.

**1.37.** "Settling Party" means any one of, and "Settling Parties" means all of, the parties to the Stipulation, namely Defendants and Lead Plaintiffs (on behalf of themselves and the Settlement Class).

**1.38.** "Unknown Claims" means any and all Claims of every nature and description that Lead Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties that, if known by him, her, or it, might have affected this Stipulation or any of the terms hereof, or might have affected his, her, or its settlement with and release of the Released Parties, or might have affected his, her, or its decision not to opt-out or object to this Settlement.

2. **The Settlement Consideration**

**2.1.** In consideration of the full and final release, settlement, and discharge of all Released Claims against the Released Parties, (i) within five (5) Business Days after entry by the Bankruptcy Court of an order modifying the automatic stay so as to permit the Insurer to make the payment set forth in this subparagraph, Defendants will either transfer or cause the Insurer to transfer $150,000 of the Settlement Amount, by wire transfer or check, to the Escrow Account, and (ii) upon the Bankruptcy Court's entry of a Final order or orders approving settlements of the Adversary Proceedings, lifting the automatic stay as to the Insurer and dismissing the Adversary Proceedings as to the individuals named as defendants therein, Defendants will either transfer or cause the Insurer to transfer the balance of the Settlement Amount ($1,500,000), by wire transfer or check, to the Escrow Account, in both cases provided that the Escrow Agent has provided

Defendants' counsel with complete wire and transfer information and instructions and a completed Form W-9 at least three (3) business days prior to the date of such payments.

2.2.    Under no circumstances will Defendants or any of their insurers be required to pay, or cause payment of, more than the Settlement Amount pursuant to this Stipulation and the Settlement for any reason whatsoever, including, without limitation, as compensation to any Settlement Class Member, as payment of attorneys' fees and expenses awarded by the Court, or in payment of any fees or expenses incurred by any Settlement Class Member or Lead Counsel.

### 3.    Handling And Disbursement Of Funds By The Escrow Agent

3.1.    No monies will be disbursed from the Settlement Fund until after the Effective Date except:

(a)    as provided in ¶ 3.5 below;

(b)    as provided in ¶ 8.2 below;

(c)    as provided in ¶ 10.10 below, if applicable; and

(d)    To pay Taxes and Tax Expenses (as defined in ¶ 4.1 below) on the income earned by the Settlement Fund.  Taxes and Tax Expenses will be paid out of the Settlement Fund and will be considered to be a cost of administration of the Settlement and will be timely paid by the Escrow Agent without prior order of the Court.

3.2.    The Escrow Agent will invest the Settlement Fund in short term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and will reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Escrow Agent will bear all responsibility and liability for managing the Escrow Account and cannot assign or delegate its responsibilities without approval of the Settling Parties and the Insurer. Defendants, their counsel,

their insurers, and the other Released Parties will not have any responsibility for or incur any liability with respect to any act, omission, determination of or by the Escrow Agent, or any designees or agents thereof, or the administration of, distribution of, or disbursement from the Settlement Fund.   The Settlement Fund will bear all risks related to the investments of the Settlement Amount in accordance with the guidelines set forth in this ¶ 3.2.

**3.3.**     The Escrow Agent will not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of counsel for Defendants.

**3.4.**     All funds held by the Escrow Agent will be deemed and considered to be *in custodia legis* of the Court and will remain subject to the jurisdiction of the Court until such time as such funds will be distributed pursuant to this Stipulation and/or further order(s) of the Court.

**3.5.**     At any time after the Court grants preliminary approval of the Settlement, the Escrow Agent may, without further approval from Defendants or the Court, disburse at the direction of Lead Counsel up to $175,000.00 (One Hundred Seventy-Five Thousand U.S. Dollars) from the Settlement Fund prior to the Effective Date to pay Administrative Costs.   After the Effective Date, additional amounts, up to $100,000.00 (One Hundred Thousand U.S. Dollars), may be transferred from the gross Settlement Fund to pay for any necessary additional Administrative Costs without further order of the Court.

**4.      Taxes**

**4.1.**     The Settling Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.   In addition, Lead Counsel or their designee will timely make such elections as necessary or advisable to carry out the provisions of this ¶ 4.1, including the "relation-back election" (as defined in Treasury

Regulation § 1.468B-1) back to the earliest permitted date.  Such elections will be made in compliance with the procedures and requirements contained in such regulations.  It will be the responsibility of Lead Counsel or their designee to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)      For purposes of § 1.468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation § 1.468B-2(k)(3) promulgated thereunder, the "administrator" will be Lead Counsel or their designee.  Lead Counsel or their designee will timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this ¶ 4.1) will be consistent with this ¶ 4.1 and in all events will reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund will be paid out of the Settlement Fund.

(b)      All Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants, their counsel, their insurers, or the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and all expenses and costs incurred in connection with the operation and implementation of this ¶ 4.1 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in this ¶ 4.1) ("Tax Expenses"), will be paid out of the Settlement Fund, as appropriate.  Defendants, their counsel, their insurers, and the other Released

Parties will have no liability or responsibility for the Taxes or the Tax Expenses.  Taxes and Tax Expenses will be treated as, and considered to be, a cost of administration of the Settlement and will be timely paid out of the Settlement Fund without prior order from the Court.  The Escrow Agent will be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be withheld under Treasury Regulation § 1.468B-2(1)(2)).  Defendants, their counsel, their insurers, and the other Released Parties will have no responsibility for, interest in, or any liability whatsoever with respect to the foregoing provided in this ¶ 4.1.  The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the provisions of this ¶ 4.1.

## 5.    Preliminary Approval Order, Notice Order, And Settlement Hearing

5.1.    As soon as practicable after execution of this Stipulation, Lead Counsel will submit this Stipulation and its exhibits to the Court and will apply for preliminary approval of the Settlement set forth in this Stipulation, requesting, among other things, entry of a preliminary approval order and approval for the mailing and dissemination of notice, substantially in the form of Exhibits A, A-1, A-2, A-3, or A-4.  The mailed Notice (Exhibits A-1 or A-4) will include the general terms of the Settlement, the provisions of the Plan of Allocation, the general terms of the Fee and Expense Award (as defined herein at ¶ 7.2), and will set forth the procedure by which recipients of the Notice may object to the Settlement or the Plan of Allocation or request to be excluded from the Settlement Class.  The date and time of the Settlement Hearing will be added to the Notice before it is mailed or otherwise provided to Settlement Class Members.  Defendants will not object to, and will have no responsibility for, Lead Counsel's proposed Plan of Allocation.

5.2.     At the time of the submission described in ¶ 5.1 hereof, the Settling Parties, through their counsel, will jointly request that, after the Notice is provided, the Court hold the Settlement Hearing and (i) approve the Settlement as set forth herein and (ii) enter a final order and judgment substantially in the form of Exhibit B hereto, as promptly after the Settlement Hearing as possible.

6.     **Releases And Covenants Not To Sue**

6.1.     Upon the Effective Date, the Releasing Parties, on behalf of themselves, their successors, and assigns, and any other Person claiming (now or in the future) through or on behalf of them, regardless of whether any such Releasing Party ever seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim, any disbursement from the Settlement Fund, will be deemed to have, and by operation of the Final Judgment will have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties and will have covenanted not to sue the Released Parties with respect to all such Released Claims, and will be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Claim, in any capacity (whether brought directly, in a representative capacity, derivatively, or in any other capacity), against any of the Released Parties.  Nothing contained herein will, however, bar the Releasing Parties from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

6.2.     With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs will expressly waive, and each of the Settlement Class Members will be deemed to have waived, and by operation of the Final Judgment

will have waived, the provisions, rights, and benefits conferred by any law of any state or territory

of the United States, or principle of common law or foreign law, which is similar, comparable, or

equivalent to California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Lead Plaintiffs acknowledge and each of the other Settlement Class Members will be deemed by

operation of law to have acknowledged, that they are aware that they may hereafter discover facts

in addition to or different from those which he, she, or it now knows or believes to be true with

respect to the subject matter of the Released Claims, but Lead Plaintiffs will expressly fully,

finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date,

will be deemed to have, and by operation of the Final Judgment will have, fully, finally, and forever

settled and released, any and all Released Claims, known or unknown, suspected or unsuspected,

contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore

have existed, upon any theory of law or equity now existing or coming into existence in the future,

including, without limitation, conduct that is negligent, intentional, with or without malice, or a

breach of fiduciary duty, law, or rule, without regard to the discovery or existence of such different

or additional facts.  Lead Plaintiffs acknowledge, and the Settlement Class Members will be

deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was

separately bargained for and a key element of the Settlement of which this release is a part.

   **6.3.** Upon the Effective Date, Defendants, on behalf of themselves, their heirs,

executors, predecessors, successors, and assigns, will be deemed to have, and by operation of the

Final Judgment will have, fully, finally, and forever released, relinquished, and discharged the

Lead Plaintiffs, Settlement Class Members, and Lead Counsel from all Claims that arise out of,

concern, or relate to the institution, prosecution, settlement, or dismissal of the Action (the "Defendants' Released Claims"), and will be permanently enjoined from prosecuting the Defendants' Released Claims against the Lead Plaintiffs, Settlement Class Members, and Lead Counsel. Nothing contained herein, however, will bar the Defendants or any Released Party from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

### 7. Administration And Calculation Of Claims, Final Awards, And Supervision And Distribution Of The Settlement Fund

**7.1.** Under the supervision of Lead Counsel, acting on behalf of the Settlement Class, and subject to such supervision and direction of the Court as may be necessary or as circumstances may require, the Claims Administrator will administer and calculate the claims submitted by Settlement Class Members and will oversee distribution of the Net Settlement Fund (as defined herein) to Authorized Claimants.

**7.2.** The Settlement Fund will be applied as follows:

   **(a)**   to pay the Taxes and Tax Expenses described in ¶ 4.1 above;

   **(b)**   to pay Administrative Costs;

   **(c)**   to pay Lead Counsel's attorneys' fees and expenses and payments to the Lead Plaintiffs for reimbursement of their time and expenses (the "Fee and Expense Award"), to the extent allowed by the Court; and

   **(d)**   to distribute the balance of the Settlement Fund, that is, the Settlement Fund less the items set forth in ¶ 7.2(a), (b), and (c) hereof (the "Net Settlement Fund"), plus all accrued interest, to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

7.3.    Upon and after the Effective Date, the Net Settlement Fund will be distributed to Authorized Claimants in accordance with the terms of the Plan of Allocation set forth in the Notice and any orders of the Court.

7.4.    This is not a claims-made settlement, and if all conditions of the Stipulation are satisfied and the Effective Date occurs, no portion of the Settlement Fund will be returned to Defendants or the Insurer.  Defendants, their counsel, their insurers, and the other Released Parties will have no responsibility for, involvement in, interest in, or authority or liability whatsoever with respect to the selection of the Claims Administrator, investment or distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the administration of the Settlement, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith and will have no liability whatsoever to any person or entity, including, without limitation, Lead Plaintiffs, any other Settlement Class Members, or Lead Counsel in connection with the foregoing.  No Person will have any claims against Lead Counsel, the Claims Administrator, or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or orders of the Court. Lead Counsel will have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim filed, where doing so is in the interest of achieving substantial justice.

7.5.    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, without limitation, any adjustments to an Authorized Claimant's claim set forth therein, is not a condition of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness,

and adequacy of the Settlement set forth in this Stipulation.  Any order or proceedings relating to the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to modify, terminate, or cancel this Stipulation, or affect or delay the finality of the Final Judgment and the releases contained therein, or any other orders entered pursuant to this Stipulation.

      **7.6.**    Defendants will cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.  The Parties acknowledge that any information provided to Lead Counsel by Defendants pursuant to this Paragraph will be treated as confidential and will be used by Lead Counsel solely to deliver the Notice and/or implement the Settlement, including the Plan of Allocation.

### 8.    Lead Counsel's Attorneys' Fees And Reimbursement Of Expenses

      **8.1.**    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund to Lead Counsel for: (i) an award of attorneys' fees from the Settlement Fund; (ii) reimbursement of actual costs and expenses, including the fees and expenses of any experts or consultants, incurred in connection with prosecuting the Action; and (iii) payments to Lead Plaintiffs for reimbursement of their time and expenses in connection with the Action.  Defendants will take no position with respect to the Fee and Expense Application(s).

      **8.2.**    Except as otherwise provided in this paragraph, the attorneys' fees and expenses awarded by the District Court will be paid to Lead Counsel from the Settlement Fund no later than ten (10) Business Days after the date the Court enters the Final Judgment and an order awarding such fees and expenses, notwithstanding any objections to or appeals of such order or of the Final Judgment.  In the event that the Effective Date does not occur, or the Final Judgment is

reversed or modified in any way that affects the award of attorneys' fees and expenses, or the Stipulation is terminated for any other reason, then Lead Counsel will be jointly and severally obligated to refund to the Escrow Account, within ten (10) Business Days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, either the full amount of the fees and expenses or an amount consistent with any modification of the Final Judgment with respect to the fee and expense award, including accrued interest at the same rate as is earned by the Settlement Fund.  Lead Counsel, on behalf of their firms and each partner and/or shareholder of their firms, agrees that the law firm and its partners and/or shareholders are subject to jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph, and each will be jointly and severally liable for repayment of all attorneys' fees and expenses awarded by the Court.  Furthermore, without limitation, Lead Counsel, and each such firm's partners and/or shareholders, agree that the Court may, upon application of Defendants, summarily issue orders, including, without limitation, judgments and attachment orders and may make appropriate findings of or sanctions for contempt against that firm or any of its partners and/or shareholders should such law firm fail timely to repay fees and expenses pursuant to this paragraph.  Any amounts awarded by the Court to Lead Plaintiffs for reimbursement of their time and expenses will not be paid from the Settlement Fund until after the Effective Date.

    **8.3.**  The procedure for, and allowance or disallowance by the Court of, the Fee and Expense Application are not a condition of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation.  Any order of or proceeding relating to the Fee and Expense Application, or any objection to, motion regarding, or appeal from any order or proceeding relating thereto or reversal or modification thereof, will not

operate to modify, terminate, or cancel this Stipulation, or affect or delay the finality of the Final Judgment or the releases contained therein or any other orders entered pursuant to this Stipulation.

8.4.    Any award of attorneys' fees and/or expenses to Lead Counsel or reimbursement payments to Lead Plaintiffs will be paid solely from the Settlement Fund and will reduce the settlement consideration paid to the Settlement Class accordingly.  No Defendant will have any responsibility for payment of Lead Counsel's attorneys' fees and expenses or other awards to Lead Plaintiffs beyond the obligation of Defendants to cause the Insurer to fund the Settlement Amount as set forth in ¶ 2.1 above.  The Released Parties will have no responsibility for, and no liability whatsoever with respect to, any payments to Lead Counsel, Lead Plaintiffs, the Settlement Class, and/or any other Person who receives payment from the Settlement Fund.

9.    **Class Certification**

9.1.    In the Final Judgment, the Settlement Class will be certified for purposes of this Settlement, but in the event that the Final Judgment does not become Final or the Settlement fails to become effective for any reason (including the exercise of a right to terminate under the Stipulation), then the certification of the Class will become null and void without further order or any court, and all Settling Parties will have reserved all their rights on all issues.

10.    **Conditions Of Settlement, Effect Of Disapproval, Cancellation Or Termination**

10.1.    Lead Plaintiffs, on behalf of the Settlement Class, and Defendants will each have the right to terminate the Settlement and Stipulation by providing written notice of his or its election to do so ("Termination Notice") to all other Settling Parties within seven (7) business days of:

(i)    entry of a Court order declining to enter the Preliminary Approval Order in any material respect;

(ii)     entry of a Court order refusing to approve this Stipulation in any material respect;

(iii)    entry of a Court order declining to enter the Final Judgment in any material respect;

(iv)    entry of a Court order refusing to dismiss the Action with prejudice;

(v)     entry of an order by which the Final Judgment is modified or reversed in any material respect by any appeal or review;

(vi)    entry of a Bankruptcy Court order declining to approve a settlement of the Adversary Proceedings as to the individuals named as defendants therein and lifting the automatic stay as to the Insurer;

(vii)   entry of an order by which a Bankruptcy Court order approving a settlement of the Adversary Proceedings as to the individuals named as defendants therein and lifting the automatic stay as to the Insurer is modified or reversed in any material respect by any appeal or review;

(viii)  failure on the part of any Settling Party to abide, in material respect, with the terms of this Stipulation.  In the absence of any of the events enumerated in the preceding sentence, ¶ 10.2, ¶ 10.5, or ¶ 10.6, no Party will have the right to terminate the Stipulation for any reason.

**10.2.**    If the Settlement Amount is not paid into the Escrow Account in accordance with ¶ 2.1 of this Stipulation, then Lead Plaintiffs, on behalf of the Settlement Class, and not Defendants, will have the right to (a) terminate the Settlement and Stipulation by providing written notice to Defendants; or (b) enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein.

**10.3.**    The Effective Date of this Stipulation will not occur, unless and until each of the following events occurs, and it will be the date upon which the last in time of the following events occurs:

(a)    Defendants have not exercised their option to terminate the Settlement pursuant to ¶ 10.5;

(b)    The Court has entered the Preliminary Approval Order attached hereto as Exhibit A or an order containing materially the same terms;

(c)    The Bankruptcy Court has entered a Final order or orders approving settlements of the Adversary Proceedings, lifting the automatic stay as to the Insurer and dismissing the Adversary Proceedings as to the individuals named as defendants therein;

(d)    The sum of $1,650,000.00 (One Million Six Hundred Fifty Thousand U.S. Dollars) has been paid into the Escrow Account, as set forth in ¶ 2.1;

(e)    The Court has approved the Settlement, following notice to the Settlement Class and the Settlement Hearing, and has entered the Final Judgment;

(f)    The Final Judgment has become Final as defined in ¶ 1.16; and

(f)    The Action has been dismissed with prejudice.

**10.4.**    Upon the occurrence of the Effective Date, any and all interest or right of Defendants or the Insurer in or to the Settlement Fund, if any, will be absolutely and forever extinguished, except as set forth in this Stipulation.

**10.5.**    If, prior to final Court approval of the Settlement, the Opt-Outs in the aggregate purchased securities during the Settlement Class Period in an amount greater than the amount specified in a separate Supplemental Agreement between the parties (the "Supplemental Agreement"), then any Defendants will have, by unanimous consent and in their sole and absolute

discretion, the option to terminate this Stipulation and Settlement in strict accordance with the requirements and procedures set forth in the Supplemental Agreement (the "Supplemental Termination Option").  The Supplemental Agreement will not be filed with the Court unless and until a dispute among the Settling Parties concerning its interpretation or application arises.

        **10.6.**   If some or all of the conditions specified in ¶ 10.3 above are not met, or in the event that this Stipulation is not approved by the Court, or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, then this Stipulation will be canceled and terminated, unless all of the Settling Parties agree in writing to proceed with this Stipulation.

        **10.7.**   None of the Settling Parties, or any of them, will have any obligation whatsoever to proceed under any terms other than those provided for and agreed herein.  If any Settling Party engages in a material breach of the terms hereof, any other Settling Party, provided that it is in substantial compliance with the terms of this Stipulation, may terminate this Stipulation on notice to all the Settling Parties.

        **10.8.**   In the event that the Stipulation will terminate, be canceled, or will not become effective for any reason, the Settling Parties will be restored to their respective positions in the Action immediately prior to May 31, 2017, and they will proceed in all respects as if the Stipulation had not been executed and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Action will be preserved without prejudice.

        **10.9.**   In the event that the Stipulation will be terminated, or be canceled, or will not become effective for any reason, the terms and provisions of the Stipulation and any document executed pursuant to or in furtherance of the Stipulation or the Settlement, with the exception of

¶¶ 10.8-10.10, and 12.15, will have no further force and effect with respect to the Settling Parties and will not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation will be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any Court order concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Counsel will constitute grounds for cancellation or termination of the Stipulation.

10.10.   In the event that the Stipulation will be terminated, or be canceled, or will not become effective for any reason, within ten (10) Business Days (except as otherwise provided in the Supplemental Agreement) after the occurrence of such event, the Settlement Fund (less taxes already paid and any reasonable Administrative Costs that have either been disbursed or are determined to be chargeable) will be refunded by the Escrow Agent to the Insurer, in proportion to their contribution to the Settlement Fund, plus accrued interest attributable to that amount by check or wire transfer, pursuant to written instructions from the Insurer.  Such amount due to the Insurer will not be reduced by any investment losses on funds in escrow and any such losses will be an obligation of the Escrow Agent.  If said amount or any portion thereof is not returned within such ten (10) day period, then interest will accrue thereon at the rate earned on the Settlement Fund until the date that amount is returned.

10.11.   At the request of the Insurer, the Escrow Agent or its designee will apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to the Insurer pursuant to written direction from the Insurer.

**10.12.**  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the Fee and Expense Application will constitute grounds for cancellation or termination of the Stipulation.

**11.      No Admission Of Liability Or Wrongdoing**

**11.1.**    The Settling Parties covenant and agree that neither this Stipulation, nor any terms of the Settlement, nor the Supplemental Agreement, nor any communication had, nor act performed or document executed in connection with any of the foregoing, is evidence or an admission or concession by any Settling Party or their counsel, any Settlement Class Member, or any of the Released Parties, of any fault, liability, or wrongdoing whatsoever, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings, or as to the validity or merit of any of the claims or defenses alleged or asserted in any such action or proceeding.  This Stipulation is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action, any wrongdoing by any Settling Party, Settlement Class Member, or any of the Released Parties, or any damages or injury to any Settling Party, Settlement Class Member, or any Released Parties.  Neither this Stipulation, nor the Supplemental Agreement, nor any of the terms and provisions of this Stipulation or the Supplemental Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statement in connection therewith, (a) will (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any Released Party, or of any infirmity of any defense, or of any damages to the Lead Plaintiffs or any other Settlement Class Member, or (ii) otherwise

be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact or any purported liability, fault, or wrongdoing of the Released Parties or any injury or damages to any person or entity, or (b) will otherwise be admissible, referred to, or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that (a) the Stipulation or the Supplemental Agreement or the Final Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to enforce the Settlement or Supplemental Agreement or Final Judgment, or as otherwise required by law; and (b) any Released Person may file the Stipulation and/or the Judgment in any action or other proceeding that may be brought against them in order to support a defense, argument, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense, argument, or counterclaim.

### 12.    Miscellaneous Provisions

**12.1.**    Except in the event of the filing of a Termination Notice pursuant to ¶¶ 10.1, 10.2, 10.5, or 10.6 of this Stipulation or termination notice in accordance with the parties' Supplemental Agreement, the Settling Parties will take all actions necessary to consummate this agreement and agree to cooperate with each other to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation.

**12.2.**    The Settling Parties and their counsel represent that they will not encourage or otherwise influence (or seek to influence) any Settlement Class Members to request exclusion from, or object to, the Settlement.

**12.3.**    Each of the attorneys executing this Stipulation, any of its exhibits, or any related settlement documents on behalf of any Settling Party hereto, hereby warrants and

represents that he or she has been duly empowered and authorized to do so by the Settling Party he or she represents.

        **12.4.**   Lead Plaintiffs and Lead Counsel represent and warrant that the Lead Plaintiffs are Settlement Class Members and none of Lead Plaintiffs' claims or causes of action against one or more Defendants in the Action or referred to in this Stipulation, or that could have been alleged against one or more Defendants in the Action, have been assigned, encumbered, or in any manner transferred in whole or in part.

        **12.5.**   This Stipulation, together with the Supplemental Agreement, constitutes the entire agreement between the Settling Parties related to the Settlement and supersedes any prior agreements.  No representations, warranties, promises, inducements, or other statements have been made to or relied upon by any Settling Party concerning this Stipulation, other than the representations, warranties, and covenants expressly set forth herein and in the Supplemental Agreement.  Lead Plaintiffs, on behalf of themselves and the Settlement Class, acknowledge and agree that any and all other representations and warranties of any kind or nature, express or implied, are specifically disclaimed and were not relied upon in connection with this Stipulation. In entering this Stipulation, the Settling Parties relied solely upon their own knowledge and investigation.  Except as otherwise provided herein, each Settling Party will bear its own costs.

        **12.6.**   This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their counsel or their respective successors in interest.

        **12.7.**   This Stipulation will be binding upon, and will inure to the benefit of, the Settling Parties and their respective agents, successors, executors, heirs, and assigns.

**12.8.**   The Released Parties who do not appear on the signature lines below, including, without limitation, to Defendants, are acknowledged and agreed to be third party beneficiaries of this Stipulation and Settlement.

**12.9.**   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

**12.10.**   This Stipulation may be executed in any number of counterparts by any of the signatories hereto, and the transmission of an original signature page electronically (including by facsimile or portable document format) will constitute valid execution of the Stipulation as if all signatories hereto had executed the same document. Copies of this Stipulation executed in counterpart will constitute one agreement.

**12.11.**   This Stipulation, the Settlement, the Supplemental Agreement, and any and all disputes arising out of or relating in any way to this Stipulation, whether in contract, tort, or otherwise, will be governed by and construed in accordance with the laws of the State of New York without regard to conflict-of-laws principles.

**12.12.**   The Court will retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

**12.13.**   The Stipulation will not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties, and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

**12.14.** Lead Plaintiffs, Lead Counsel, and the attorneys, staff, experts, and consultants assisting them in this Action agree that (a) they will not intentionally assist or cooperate with any person or entity in the pursuit of legal action related to the subject matter of this Action against the Released Parties, (b) they will not intentionally assist or cooperate with any person or entity seeking to publicly disparage or economically harm the Released Parties with respect to any matter relating to the subject matter of this Action, and (c) they will not discuss any confidential matters related to this Action or the Settlement with anyone.

**12.15.** All agreements by, between, or among the Settling Parties, their counsel, and their other advisors as to the confidentiality of information exchanged between or among them will remain in full force and effect and will survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement.

**12.16.** The Settling Parties will not assert or pursue any action, claim, or rights that any party violated any provision of Federal Rule of Civil Procedure 11 and/or the Private Securities Litigation Reform Act of 1995 in connection with the Action, the Settlement, the Stipulation, or the Supplemental Agreement. The Settling Parties agree that the Action was resolved in good faith following arm's-length bargaining, in full compliance with applicable requirements of good faith litigation under the Exchange Act, Federal Rule of Civil Procedure 11, and/or the Private Securities Litigation Reform Act of 1995.

**12.17.** Any failure by any of the Settling Parties to insist upon the strict performance by any other Settling Party of any of the provisions of the Stipulation will not be deemed a waiver of any of the provisions hereof, and such Settling Party, notwithstanding such

failure, will have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Settling Parties to this Stipulation.

**12.18.** The waiver, express or implied, by any Settling Party of any breach or default by any other Settling Party in the performance of such Settling Party of its obligations under the Stipulation will not be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

**12.19.** The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

**IN WITNESS WHEREOF**, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated: _May 31_, 2017

**POMERANTZ LLP**

By: _____
Jeremy A. Lieberman
Justin Solomon Nematzadeh
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Fax: (212) 661-8665

*Lead Counsel for Lead Plaintiffs and the Class*

Dated: _____, 2017

**BRAFMAN & ASSOCIATES, P.C.**

By: _____
Marc Agnifilo (of counsel)
Andrea Zellan
Joshua Kirshner
767 3rd Avenue, 26th floor
New York, New York 10017
Telephone: (212) 750-7800
Fax: (212) 750-3906

*Counsel for Defendant Robert Cassera*

Dated: _____, 2017

**WINSTON & STRAWN LLP**

By: _____
James P. Smith III
Richard W. Reinthaler
Frank S. Restagno
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-4633
Fax: (212) 204-4700

*Counsel for Defendant Michael J. Golde*

Dated: _____, 2017

**BACHNER & ASSOCIATES, P.C.**

By: _____
Michael F. Bachner
Scott J. Splittgerber
39 Broadway, Suite 1610

Justin Solomon Nematzadeh
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Fax: (212) 661-8665

*Lead Counsel for Lead Plaintiffs and the Class*

Dated: May 31, 2017

**BRAFMAN & ASSOCIATES, P.C.**

By: _____
Marc Agnifilo (of counsel)
Andrea Zellan
Joshua Kirshner
767 3rd Avenue, 26th floor
New York, New York 10017
Telephone: (212) 750-7800
Fax: (212) 750-3906

*Counsel for Defendant Robert Cassera*

Dated: _____ __, 2017

**WINSTON & STRAWN LLP**

By: _____
James P. Smith III
Richard W. Reinthaler
Frank S. Restagno
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-4633
Fax: (212) 204-4700

*Counsel for Defendant Michael J. Golde*

Dated: _____ __, 2017

**BACHNER & ASSOCIATES, P.C.**

By: _____
Michael F. Bachner
Scott J. Splittgerber
39 Broadway, Suite 1610
New York, NY 10006
Telephone: (212) 344-7778
Fax: (212) 344-7774

*Counsel for Defendant Robert Cassera*

Dated: _My 31_, 2017

**WINSTON & STRAWN LLP**

By: _____
James P. Smith III
Richard W. Reinthaler
Frank S. Restagno
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-4633
Fax: (212) 204-4700

*Counsel for Defendant Michael J. Golde*

Dated: _____ __, 2017

**BACHNER & ASSOCIATES, P.C.**

By: _____
Michael F. Bachner
Scott J. Splittgerber
39 Broadway, Suite 1610
New York, NY 10006
Telephone: (212) 344-7778
Fax: (212) 344-7774

*Counsel for Defendant John Messina, Sr.*

Dated: _____ 2017    **POMERANTZ LLP**

           By: _____
           Jeremy A. Lieberman
           Justin Solomon Nematzadeh
           600 Third Avenue, 20th Floor
           New York, NY 10016
           Telephone: (212) 661-1100
           Fax: (212) 661-8665

           *Lead Counsel for Lead Plaintiffs and the Class*

Dated: _____ , 2017   **BRAFMAN & ASSOCIATES, P.C.**

           By: _____
           Marc Agnifilo (of counsel)
           Andrea Zellan
           Joshua Kirshner
           767 3rd Avenue, 26th floor
           New York, New York 10017
           Telephone: (212) 750-7800
           Fax: (212) 750-3906

           *Counsel for Defendant Robert Cassera*

Dated: _____ , 2017   **WINSTON & STRAWN LLP**

           By: _____
           James P. Smith III
           Richard W. Reinthaler
           Frank S. Restagno
           200 Park Avenue
           New York, New York 10166
           Telephone: (212) 294-4633
           Fax: (212) 204-4700

           *Counsel for Defendant Michael J. Golde*

Dated: *May 31*, 2017    **BACHNER & ASSOCIATES, P.C.**

           By: _____
           Michael F. Bachner
           Scott J. Splittgerber
           39 Broadway, Suite 1610